# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00149-RM

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

2. **PAMILA LUCERO**,

        Defendant.

___

### DEFENDANT LUCERO'S OBJECTIONS AND COMMENTS/CORRECTIONS TO THE PRESENTENCE INVESTIGATION REPORT
___

Defendant Pamila Lucero by and through counsel, John Henry Schlie, hereby makes her objections to the Presentence Investigation Report ("Report") dated May 12, 2016 , 2016  pursuant to Rule 32(f), Federal Rules of Criminal Procedure, and additional comments and corrections as follows:

### OBJECTIONS THAT REQUIRE COURT DETERMNIATION

Page 5, Section 18, Specific Offense Characteristics, Loss - Ms. Lucero contends that the appropriate loss figure should be less than $550,000.00 and thus a specific offense level increase of 12 rather than the 14 level increase included in the advisory guideline range calculation in the Presentence Investigation Report.  The Report accepts the Government's calculation of intended loss, which is believed to include tax returns filed with the IRS in 2013 and 2014 that primarily, if not completely, involved other co-defendants, including many returns of which Ms. Lucero had no direct knowledge.  U.S.S.G § 2B1.1(b) contains a Specific Offense Characteristic for loss

containing a graduated scale which can add between 2 to 30 levels to the base offense level of 6.  Application Note 3(A), related to the loss Specific Offense Characteristic, directs that the loss figure to be used is the greater of the actual or intended loss.  It is undisputed that the actual loss incurred by the Government was $370,384.26 for the <u>entire</u> conspiracy.  *See* Raul Caraveo Plea Agreement (Docket No. 193).   It is believed that it is also undisputed that the actual loss resulting from checks received by and cashed by Ms. Lucero was $140,913.02, as this figure comes directly from the case agent's reports.  The 14 level increase for loss sought by the Government would require a finding of intended loss greater than $550,000.00.  A 12 level increase for loss as argued by Ms. Lucero would require a finding of intended loss between $250,000.00 and $550,000.00.

Application Note 3(A)(ii), which defines intended loss, was amended on November 1, 2015 to clarify its application.  It now states in relevant part: "'Intended loss' (1) means the pecuniary harm <u>that the defendant purposely sought to inflict</u>..." (emphasis added). Thus, intended loss requires a finding of the subjective intent of Ms. Lucero.  The Sentencing Commission stated in its Supplement to Appendix C to the United States Sentencing Guidelines, Amendment 792, "[t]he amendment reflects the Commission's continued belief that intended loss is an important factor in economic crime offenses, but also recognizes that sentencing enhancements predicated on intended loss, rather than losses that have actually accrued, should focus more <u>specifically on the defendant's culpability</u>."  (emphasis added).  As stated in <u>United States v. Yihao Pu</u>, 814 F.3d 818, 824 (7th Cir. 2016) , a case actually decided on the basis of the Application Note prior to the clarifying amendment:

The general rule is that the district court determines the greater of actual or intended loss. U.S.S.G. § 2B1.1 n. 3(A) (2014). The guidelines define intended loss as "the pecuniary harm that was intended to result from the offense," which "includes intended pecuniary harm that would have been impossible or unlikely to occur." See id. at n. 3(A)(ii). Pecuniary harm is monetary harm or a harm that is readily measurable in money; it does not include non-economic harm. Id. at n. 3(A)(iii). "Intended loss analysis, as the name suggests, turns upon how much loss the defendant actually intended to impose" on the victim, regardless of whether the loss actually materialized or was even possible. United States v. Higgins, 270 F.3d 1070, 1075 (7th Cir.2001); see also United States v. Middlebrook, 553 F.3d 572, 578 (7th Cir.2009) ("[T]he true measure of intended loss [is] in the mind of the defendant."). The phrase "result from" imposes a requirement of but-for causation. See Burrage v. United States, ⎯⎯ U.S. ⎯⎯, 134 S.Ct. 881, 886–88, 891, 187 L.Ed.2d 715 (2014) (finding when a statute does not define the phrase "result from," the court should give it its ordinary meaning, which is actual or but-for causation). Finally, if a loss occurred but the sentencing court cannot reasonably determine the amount of the loss, it may use the gain that resulted from the offense as an alternative measure to estimate the loss amount. See U.S.S.G. § 2B1.1 n. 3(B).

(Footnote omitted)

3

Based on this criteria, Ms. Lucero contends that the intended loss figure should be between $250,000.00 andf $550,000.00, resulting in only a 12 level increase for the loss Specific Offense Characteristic pursuant to U.S.S.G § 2B1.1(b)

**COMMENTS/CORRECTIONS THAT DO NOT REQUIRE COURT DETERMINATION**

Ms. Lucero is not requesting that the Court make any findings on any of the following comments or corrections.  These comments or corrections do not affect the advisory sentencing guideline range, are being submitting these only for purposes of explanation, clarification or accuracy and do not required any judicial findings or determinations.

Page 7, Section 32, and Page 15, Section 64 - While Ms. Lucero does not dispute the statements made in these Sections, the factual scenario is more complicated.  During the summer of 2009, Ms. Lucero and her husband were experiencing significant marital difficulties and the custody of their son was a substantial issue.  The marital disputes involved not only Ms. Lucero and her husband but also other members of her husband's family, his mother in particular, as there were disputes between her and Ms. Lucero regarding Ms. Lucero's access to her son while he was in her mother-in-law's care.  The victim described in these Sections was Ms. Lucero's mother-in-law .  As will be explained in greater detail in subsequent motions, issues of loss or potential loss of her children present significant stressors for Ms. Lucero following the death of her first son from a heart defect at the age of 38 days.

Page 9, Section 34 and Page 16, Section 66 - The events described in these Sections are related.  In addition, on the day of Ms. Lucero's arrest, her roommate had

4

contacted the Colorado Springs Police Department to report concern for Ms. Lucero as she had not slept in 6 days and was not taking her medication.

Page 10, Section 44 and 45 - To clarify, the events that Ms. Lucero was subjected to occurred from age 5 to age 19/20.

Page 11, Section 48 - Ms. Lucero meant to convey that she had lived with her mother on and off for the past 3 years. The last time that she moved back with her mother was in August of 2015 but she had lived there periodically prior to that.

Respectfully submitted this 26th day of May, 2016.

s/ John Henry Schlie
**John Henry Schlie**
John Henry Schlie, P.C.
5105 DTC Parkway, Suite 450
Greenwood Village, Colorado 80111
Telephone: (303) 830-1616
FAX: (303) 220-8150
E-mail: johnhenry@schlielawfirm.com
ATTORNEY FOR DEFENDANT
PAMILA LUCERO

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2016, I electronically filed the foregoing **DEFENDANT LUCERO'S OBJECTIONS AND COMMENTS/CORRECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Assistant United States Attorney Martha A. Paluch
martha.paluch@usdoj.gov

U.S. Probation Officer Nicole Peterson
Nicole_Peterson@cod.uscourts.gov

and by depositing in the United States mail, first-class, postage prepaid to:

    Assistant United States Attorney Martha A. Paluch
    1225 Seventeenth Street, Suite 700
    Denver, Colorado 80202

    Nicole Peterson U.S. Probation Officer
    Byron G. Rogers U.S. Courthouse
    1929 Stout Street, Suite C-120
    Denver, Colorado 80294

                                             <u>s/ John Henry Schlie</u>
                                             John Henry Schlie