IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00149-RM-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PAMILA LUCERO,

    Defendant.

---

### GOVERNMENT'S SENTENCING BRIEF RE LOSS CALCULATION

---

The United States of America, by and through United States Attorney John F. Walsh and the undersigned Assistant United States Attorneys, hereby files the following Sentencing Brief regarding the loss amount the government submits should be attributed to the defendant Pamila Lucero.

**Background**

At the conclusion of the sentencing hearing held on Thursday, June 16, 2016, the Court directed the government to file by June 30, 2016, a brief explaining more fully its basis for asserting that the intended loss attributed to the defendant is $565,396, as set forth in the government's objections to the presentence report, ECF No. 465 at 4. Attached to the government's objections was a chart labeled Exhibit 1, which set forth the tax returns the government asserts should be attributed to the defendant. The Court directed the government to file a revised Exhibit 1 organizing the returns in the

1

following categories, or "pots":

1) Refund checks cashed by the defendant;

2) Refund checks and tax returns derived/based upon addresses obtained by the defendant;

3) Refund checks and tax returns that were the product of discussions between the defendant and Raul Caraveo or Eugene Chavez;[1] and

4) Refund checks and tax returns that were not the product of discussions between the defendant and Raul Caraveo or Eugene Chavez, but that the government argues should be included in the intended and actual (restitution) amounts because they are based upon pecuniary harm the defendant purposefully sought to inflict.

The revised chart is attached hereto as Exhibit 1A.  The categories for each return or check are referenced in the far right column, and where applicable, reference to the date and time of a recorded call that pertains to a specific return or check is included in this column as well.[2]

**Argument**

IRS Special Agent Anthony Romero testified that the recorded calls and information from co-conspirators established that the defendant's involvement in the tax fraud conspiracy began in December of 2008 and continued through the end of the

---

[1] While calls between the defendant and Eugene Chavez were not specifically mentioned by the Court when discussing Pot 3, IRS Special Agent Anthony Romero has found such calls and referenced them in the attached Exhibit 1A.

[2] The government notes that in some instances, certain returns/checks were discussed in more than one call, but at least one call is referenced for each return/check placed in Pot 3.

scheme in May of 2014. Agent Romero testified that during the defendant's involvement, 254 false returns attributable to her were filed seeking over $675,000 in fraudulent refunds. *See* ECF No. 465 at 2.

However, in light of the information contained in the presentence report regarding the defendant's "significant mental health history," ECF No. 480 at 24, ¶ 114, the government proposed that the Court limit the defendant's intended loss to tax returns submitting during the following time period: starting after the defendant's release from the state mental hospital in November of 2009 and ending with the Ybarra returns submitted in November 2013.[3] ECF No. 465 at 3-4. This results in attributing 207 returns to the defendant (rather than the original 254 returns) for a total intended loss amount of $565,396. The government submits the defendant should be ordered to pay restitution in the actual loss amount from these 207 returns of $277,586.66. *See* Ex. 1A at 16.

The defendant was directly involved in the false returns and refund checks described in Pots 1-3, and the intended loss from these returns are clearly attributable to her. *See* U.S.S.G. § 1B1.3(a)(1)(A) (all acts "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" by the defendant are attributable to her). Therefore, what remains is the Court's determination of which return amounts should be attributed to the defendant from Pot 4.

---

[3] In footnote 2 of its objections, the government stated that the defendant's depression was not a basis for excluding returns attributable to her between September of 2013 and her arrest in March of 2014. ECF No. 465 at 3 n.2. That sentence *should* have read between September and November of 2013. The government is not arguing that any returns after November of 2013 be attributed to the defendant.

3

In arguing that the intended loss attributable to her is less than $550,000, the defendant argued that the Court must base its determination of intended loss on U.S.S.G. § 2B1.1 App. N. 3(A)(ii). ECF No. 462 at 2. That provision defines intended loss as the "pecuniary harm that the defendant purposefully sought to inflict . . . ." This is also the language the Court incorporated in its description of Pot 4.

However, before measuring *intended* loss under U.S.S.G. § 2B1.1 (the amount inside the Pot), the Court must first measure the scope of the loss (the actual size and shape of the Pot) pursuant to § 1B1.3. *See* U.S.S.G. § 1B1.1 ("the provisions of this manual" are to be applied "in the following order" and starting sequentially with the provisions of Chapter 1 and proceeding through Chapter 5); *United States v. Jeppeson,* 333 F.3d 1180, 1183 (10th Cir. 2003) ("Section 1B1.1 of the Guidelines sets forth the order in which the various sections of the Guidelines should be applied"); *United States v. Allen*, 229 F. App'x 742, 744 (10th Cir. 2007) (same).

Within the definition of either actual or intended loss, the term "offense" refers to a defendant's relevant conduct, as determined by U.S.S.G. § 1B1.3. *See United States v. Holbert,* 285 F.3d 1257, 1261 n.3 (10th Cir. 2002); *United States v. Gonzales,* No. CR 14-0922, 2016 WL 815614, at *23 (D.N.M. Feb. 16, 2016) ("the omission of a cross-reference to § 1B1.3 in the application notes to § 2B1.1 is of no 'substantive significance' because 'the drafters apparently felt that the cross-reference to § 1B1.3 was unnecessary because the relevant conduct rules apply to all offense types'") (citation omitted); *see also* U.S.S.G. § 1B1.2(b) (directing the district court, "[a]fter determining the appropriate offense guideline section," to "determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct))."

4

### *Relevant Conduct*

Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." *United States v. Figueroa-Labrada,* 720 F.3d 1258, 1265 (10th Cir. 2013) (citing U.S.S.G. § 1B1.3(a)(1)(A), (B)).

In determining relevant conduct in a conspiracy, "a defendant is accountable for the conduct of others that is within the scope of [her] agreement and reasonably foreseeable by [her]." *United States v. Green,* 175 F.3d 822, 837 (10th Cir. 1999). Accordingly, at sentencing, a district court must make particularized findings as to (1) the scope of the criminal activity the defendant agreed to undertake regarding the conspiracy and (2) the relevant conduct reasonably foreseeable to the defendant. *Id.*; *Figueroa-Labrada,* 720 F.3d at 1265 (same); *United States v. Sells,* 477 F.3d 1226, 1242 (10th Cir. 2007) (same). As a result, the Court's loss calculation properly includes all losses stemming from the reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity, even if the defendant was not directly involved in those acts. U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Gordon,* 710 F.3d 1124, 1164 (10th Cir. 2013) (noting that, in a conspiracy causing financial loss to others a conspirator is responsible for "*all . . . reasonably foreseeable* conduct of his co-conspirators that is in furtherance of the conspiracy") (emphasis in original); *United States v. Gallant,* 537 F.3d 1202, 1240 (10th Cir. 2008) (same); *United States v. Brewer,* 983 F.2d 181, 185 (10th Cir. 1993) (same).

Applying these standards, the losses from Pot 4 should be attributed to this

defendant because these losses were within the scope of the criminal activity she agreed to undertake and because these losses were reasonably foreseeable to her. Indeed, in her plea agreement, the defendant admitted that she knew how the conspiracy was carried out, admitted to knowingly and voluntarily participating in it, and admitted to knowing the role her co-conspirators played in the conspiracy.  ECF No. 360 at 3-6.  For these reasons, returns submitted by these same co-conspirators during the time of the defendant's involvement in this conspiracy, contained in Pot 4, were reasonably foreseeable to her and should be included her intended loss.

### *Intended Loss*

Section 2B1.1 "requires the district court to calculate the amount of loss attributable to an individual defendant's conduct in perpetrating a fraud." *United States v. Treadwell,* 539 F.3d 990, 1002 (9th Cir. 2010); *see* U.S.S.G. § 2B1.1 app. n. 3(A)(ii) ("[i]ntended loss (I) means the pecuniary harm that the defendant purposefully sought to inflict . . . .)."  However, where "the amount of loss is the result of 'jointly undertaken criminal activity' – such as a conspiracy – the relevant amount of loss *must be* determined on the basis of 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction.'"  *Treadwell,* 539 F.3d at 1002 (citing § 1B1.3(a)(1)(B) (emphasis added); *United States v. Read,* 710 F.3d 219, 230 (5th Cir. 2012) (referring to the "pecuniary harm" test of the pre-2016 version of  § 2B1.1, app. note. 3(A)(i), but holding that because the defendant was convicted of conspiracy, the relevant conduct provisions of § 1B1.3 controlled); *United States v. Brownell,* 495 F.3d 459, 461-62 (7th Cir. 2007) (same); *United States v. Bent,* 445 F. App'x 487, 491 (3rd

6

Cir. 2011) (rejecting defendant's argument that "he was not *personally* responsible for some of the losses attributed to him," because this argument failed "to recognize the fundamental point that because [he] was part of a conspiracy, he is responsible not only for the losses caused by his personal conduct, but also for the losses caused by 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity'") (citing § 1B1.3, emphasis in original).

Provided the Court makes the necessary findings detailed above (scope of criminal activity and reasonable foreseeability), then the relevant conduct determination drives the intended loss calculation. To hold that the intended loss for a co-conspirator is limited solely to "the pecuniary harm that the defendant purposefully sought to inflict," would be to ignore the provisions of § 1B1.3, and the concept of "jointly undertaken criminal activity" would never come into play.

*United States v. Tran*, 285 F.3d 934 (10th Cir. 2002) is instructive. There, defendant Tran agreed with others to be part of a bank fraud scheme in which the group travelled to banks to cash fraudulent, pre-printed checks. *Id.* at 935-36. Tran stopped cashing checks on January 7, 2000; his co-defendants, however, continued to cash checks without any assistance from Tran. *Id.* at 936. At sentencing, the district court held Tran responsible for his co-defendants' cashing of fraudulent checks because it was part of a jointly undertaken scheme that was reasonable foreseeable to him. *Id.* at 938. The Tenth Circuit rejected Tran's challenge to the resulting guidelines calculation, citing the district court's finding that the co-defendant's conduct was sufficiently similar to be foreseeable and within the scope of their jointly undertaken criminal endeavor, and explaining that, with such findings, the district court's

7

application of the relevant conduct guideline was "perfectly appropriate." *Id.* at 939.

This defendant is similar to Tran: she agreed to be part of a jointly undertaken criminal endeavor, worked closely with others to make the endeavor succeed, and should be held responsible for reasonably foreseeable conduct that occurred within the scope of that endeavor. The defendant's co-conspirator Raul Caraveo "purposefully sought to inflict" as much pecuniary harm as he could (the goal of the endeavor was to get as much IRS money as possible without getting caught) and the defendant knowingly and voluntarily agreed to help Caraveo pursue that goal. The law therefore holds her accountable for those returns listed in Pot 4; they were within the scope of her agreed upon criminal activity and were reasonably foreseeable to her.[4]

The government has met its burden to prove the amount of intended loss attributable to this defendant by a preponderance of the evidence. *United States v. Kieffer,* 681 F.3d 1143, 1168 (10th Cir. 2012). Accordingly, at the July 29, 2016 continued sentencing hearing, the government will request that the Court find that the defendant's intended loss is $565,396 and the actual loss is $277,586.66. The government will seek restitution in the amount of $277,586.66, and will file a Motion for

---

[4] At the July 29, 2016 continued sentencing hearing, the government will seek permission for Agent Romero to testify about the returns placed in Pot 4.

a Preliminary Order of Forfeiture in the amount of actual loss determined at sentencing.

                Respectfully submitted,

                JOHN F. WALSH
                United States Attorney

By:    s/ *Martha A. Paluch*_____
        MARTHA A. PALUCH
        BRYAN D. FIELDS
        Assistant United States Attorneys
        1225 Seventeenth Street, Suite 700
        Denver, Colorado 80202
        Telephone: (303) 454-0100
        Facsimile: (303) 454-0404
        Martha.paluch@usdoj.gov
        Bryan.Fields3@usdoj.gov
        Attorneys for the Government

## CERTIFICATE OF SERVICE

      I hereby certify that on this 30th day of June, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Mr. John Mosby
Counsel for Cristina Portillos
john_mosby@msn.com

Mr. John Schlie
Counsel for Pamila Lucero
johnhenry@schlielawfirm.com

Mr. Thomas Ward
Counsel for Eugene Chavez
tward@wardlawdenver.com

Mr. David Owen
Counsel for Conrad Archuleta
davidowen@lodopc.com

Mr. Martin Stuart
Counsel for Raul Caraveo
mstuart@portmanstuart.com

Ms. Marci Gilligan LaBranche
Counsel for Sabrina Caraveo
labranche@ridleylaw.com

Mr. Robert Pepin
Counsel for Carolina Aragon
Robert_Pepin@fd.org

Mr. John Sullivan
Counsel for Nancy Guzman
jfslaw1@aol.com

                                        *s/Mariah Tracy*
                                        Mariah Tracy
                                        Legal Assistant
                                        U.S. Attorney's Office
                                        1225 17th Street, Suite 700
                                        Denver, CO 80202
                                        Telephone: (303) 454-0100
                                        FAX: (303) 454-0401
                                        Email: Mariah.tracy@usdoj.gov